19-4017 Payan v. United Parcel Ms. Hollingsworth Thank you, Your Honor. May it please the Court, my name is April Hollingsworth. I am appearing on behalf of Chuck Payan in this case. The lower court's error was in not finding that Mr. Payan presented sufficient evidence  Mr. Payan had his stock and his raise taken away from him by the same person in HR at UPS who was involved in responding to discovery requests in his federal litigation that involved discrimination and retaliation. The parties don't dispute that these facts present a prima facie case of retaliation. And the law is that if a plaintiff presents a prima facie case of retaliation, then he also presents evidence of inconsistencies in the explanations provided for the discipline or that he was treated differently than comparators or that there were procedural irregularities. Mr. Payan, he had an earlier case before the circuit, why shouldn't the facts and allegations in this case have been merged into the previous case? Ms. Hollingsworth Well, Your Honor, because the case law is that when it arises from different facts, then you can bring a separate case. The events that occurred that are the subject of this case didn't even occur until after the litigation had begun. One of the factors to consider in whether a claim to conclusion bars a subsequent case is whether there was a full and fair opportunity to litigate those claims. And in this case, by the time that these acts had occurred in July 2015 is when Mr. Payan was disciplined. The deadline for amending claims had already passed. Mr. Phillips Was that case in the circuit by then or was it still in the district court? Ms. Hollingsworth No, it was still in the district court. Mr. Phillips Did you ask the district court if you could amend the complaint and add new allegations? Because the retaliation in this case is sequential to his exercise of his Title VII rights in the previous case, right? Ms. Hollingsworth Right. It is sequential, but it's several years apart and involves different actors, different damages. And so by the Supreme Court's precedent, and I think it's Katz v. Girardi, for a claim to be barred by claim to conclusion, the facts have to be the same, the actors have to be the same, the damages have to be the same, so none of those factors were present. To your question, did we seek to add, no, we did seek to do discovery into the reasons for the discipline and were barred from that. We explained that in the briefs. By the time that decision was made, it was, discovery had closed. So we didn't seek to add the claims to this case and filed a separate case. As I was saying, once a plaintiff presents evidence of all these different irregularities, then the case is entitled to go to a jury. And in this case, we presented evidence of all sorts of types of pretext, which, while perhaps not one certain event would have supported a sufficient finding such that a jury gets to decide the case, taken in their totality, as the Fassbender case says it must be, then we did provide sufficient evidence that a jury should decide whether or not the employer's conduct was illegal. So I want to talk mostly about Darren Moore, who's the person who actually made the decision in this case. We talked in the briefs about the different ways that, there were several different actors involved in this discipline, Joe Brom, Lisa Circada, Carolee Streeper, and they all did sort of some odd things. But it all came up to Darren Moore. He was at the top of the food chain and, according to his declaration, was reviewing all the evidence, all the documents that these other individuals were submitting to him. So what we have to look at is... The client violated the integrity policy of the company, and the question is not that he violated it, that whether he had an excuse or at least he was disciplined differently than others that used the same excuse. Can you kind of clarify for me what the crux of that, of your argument is? Well, our argument is that it's not ever been made clear what he was accused of doing. So he was never even asked about the PTRS issues that came up subsequent to Darren Moore already deciding that he should be disciplined. Well, he was given a written explanation, right? He was given a written explanation. And he was told he violated the integrity policy by changing the time cards, right? No. Well, I have the exact language here. He was given pretty... It was tied to the integrity policy, and it was tied to the time cards. In vague ways, yes. And it wasn't clear, was he alleged to have directed a change to the time card? Was he alleged to have made the changes? It's not clear... What difference does it make? He's the... He's the... I mean, all of the evidence that they collected was that he instructed people who reported to him to change entries on time cards. Actually, Your Honor, that's not correct. Some of the statements say that these people were not present for any such direction to change the time cards without the driver's knowledge. The people who changed the time cards, the people who actually made the changes, said that they were directed to do so by Mr. Payan, correct? Yes. They did say that. Okay. And so the issue... Isn't the issue here, in terms of pretext, is whether there's any reason to believe that the decision-maker, Mr. Moore, didn't in good faith believe that? Right. Well, that he didn't in good faith believe that that subject Mr. Payan to the discipline that he received. So there's several... And we have to look at the, from the decision-maker's perspective, the information he had. And there is a lot of information that he had that should have suggested to him that Mr. Payan shouldn't have been disciplined. For instance, he said that he got the information that Joe Brahm collected. Well, among those statements were the statement of Doug Mason, who said, on April 20th, Mr. Payan changed the procedure and made sure, made very clear that we were to get a driver's signature before we made any changes. So that had been done before this investigation even begun, and as... And what's your point? I don't understand. And they're disciplining him for changing the time cards, so he sets a fire and then he comes up with a process for putting the fire out. They can still discipline him for setting the fire, but... Well, if they were going to discipline him for setting the fire, then they should have also disciplined Cindy Holcomb for setting the fire, who in her statement to Lisa Cercada admits doing precisely what Mr. Payan had done. Was Mr. Moore the decision-maker in that instance? He received, well, she wasn't disciplined, and that's my point. Well, let me broaden the question a bit then, because I wasn't clear on this from the briefing. Isn't it the case that if you're going to make an argument that others were not treated the same as your client, that you have to show that it was the same decision-maker to be able to make that argument? No, Your Honor. What we have to show is that they are similarly situated, they're at the same level. No. Don't you have to show that Mr. Moore made the decision as to the others as well as to Mr. Payan? Isn't that what the cases require? Your Honor, I don't believe that that's what the cases require, but to that point... Well, let's focus on what the law requires. What does the law require in terms of same decision-maker? Because there is discussion in the cases about that. Well, what... Could you talk about the cases? The cases that I have seen... No, the cases that you put in your brief on this issue and that UPS put in their brief, I'd like to know what your understanding of those cases is with respect to your argument about others being similarly situated to your client and whether they have to be disciplined by the same decision-maker. Okay. So... So, I'd like to know a case. It doesn't seem like you want to talk about a case. Well, Your Honor, frankly, I don't know of a case that says the decision-maker has to be the same. How about Lowell v. Los Alamos National Labs, 10th Circuit, 2017? Then if that case says the decision-maker has to be the same, then my response to that is, Darren Moore is the HR person over the entire state of Utah. No, but that's not... That isn't the response. Did he make the decision as to these other individuals? The answer is... It's a fact question. Did he make the decision as to these other individuals? With respect to Cindy Holcomb, yes, because... And how... Where is that in the record? The... The... Cindy... Cindy Holcomb's statement is at... In the appendix at page 415. This was one of the documents that was submitted to Mr. Moore, and in that document, she says that she was doing exactly what Mr. Payan was accused of doing, which was allowing her supervisors to make changes to driver time cards without speaking to the drivers first. In the... Well, did she engage in the witness tampering that was alleged against your client? The witness tampering allegation, Your Honor, came three years later, in 2018, as part of the 30B-6. When we asked in discovery what the basis was for the investigation, and then we asked in a separate interrogatory on page 1052, what were the findings of this investigation, there is no mention of Mr. Payan tampering with any witnesses. None of the... None of the supervisors, and I realize supervisor is a curious word here, because their supervisor is the one who is reporting to him, but none of the supervisors during the investigation told the investigators that Mr. Payan had told them what to say during the investigation. Your Honor, that's not what I said. What I said was... Well, no, I didn't... I wasn't trying to repeat what you said. I'm just asking you that question. Right. Did the supervisors, during the course of the investigation, tell the investigators that Mr. Payan had told them what to say? Some of them did say that, but it's not mentioned as a basis for the discipline. So if UPS believed those people... Well, mentioned where? Where does it need to be mentioned? Well, it was... They had several opportunities to explain to Mr. Payan in the written discipline and in that meeting why he was being disciplined, and then they were specifically asked in discovery in 2017 why he was being disciplined. And in the answer to that interrogatory, they incorporate by reference the statements of the very people who said that Mr. Payan tried to manipulate their testimony. There were a lot of statements in... that could be incorporated into that answer. But if they believed that his trying to dissuade people or tell them what to say was a reason for discipline, why didn't they say it? One has to ask, if this was a violation of the integrity policy, and they believed he had tried to influence people, they should have, when asked directly to respond to an interrogatory as to what the conclusions of this investigation were, why didn't they say that this was a basis for his violation of the integrity policy? Your Honor, I'd like to reserve the rest of my time. You may. Thank you. Mr. Williams for UPS. Morning, Your Honors. May it please the Court, my name is Brad Williams, I'm representing UPS and two individual defendants in this lawsuit. Your Honors, this is a pretext case in which Mr. Payan was given relatively modest discipline in relation to fairly egregious misconduct. UPS, after learning that there was a potential time card issue, conducted a very thorough investigation and through that investigation, it determined that Mr. Payan had been directing the supervisors underneath him to add unpaid lunches to the time cards of drivers. And this resulted in the drivers being shorted pay and exposed UPS to significant liability. That investigation also determined that Mr. Payan had been directing office workers working under him to change the recording of their overtime, specifically if they exceeded a certain amount of hours in a particular day, he instructed them to move those hours to another day so as to avoid overtime obligations, again, exposing UPS to significant liability. The investigation further determined that Mr. Payan, once he was caught for these things, he went to his supervisors and said, let's say that there was a miscommunication between me and you, and let's stick to this story. The investigation further determined- Counsel, I think what the appellant said about that, correct me if I'm wrong, is that in the notice of discipline in the meeting, really not until much later in the litigation, nobody really specifically said that. Sure. Isn't that a problem for your case on pretext? No, it's not, Your Honor, and the reason why is the Matthews case. Counsel referenced the Fassbender case, which stands for the proposition that if a rationale for pretext changes over time, or excuse me, a rationale for discipline changes over time, that can be evidence of pretext, but Matthews stands for a different proposition, which is that if an explanation for discipline merely evolves and becomes more specific elaboration later on, but not necessarily a change, then there is no pretext, and that's exactly what we have here. Wasn't the first reason given, though, that he violated the production and safety numbers, and that seems to be a quite different rationale than violating an integrity policy. That seems more than evolution, but, you know, a distinct change. Sure, Your Honor, and there's only one mention of that. That comes from Mr. Payan's own testimony. He claims, deposition testimony, he claims that in this July 21st meeting, he was told by Mr. Moore, excuse me, Mr. Brom and Ms. Streeper that in addition to the time card issues that there were these safety and production issues, but that's not corroborated anywhere else in the record, and in fact, Matthews also addresses that and says that if somebody gives a rationale for discipline, but that somebody is not the decision maker, in this case, Mr. Brom or Ms. Streeper, then that is not, that can't play into an inconsistent rationale. Are you saying that the time card issue was always on the table? Yes. So let me go back to Your Honor's original question about that. When Mr. Payan was disciplined on July 21st, he was given a disciplinary notice that expressly referenced the integrity policy, and it said that there had been integrity violations in relation to time card preparedness and adjustments. Counsel has taken the position, the opposing counsel has taken the position that UPS only in a 30p6 deposition later said that that includes this witness tampering, but that's not true, Your Honor. In that deposition, it was certainly said that of course witness tampering can constitute an integrity violation, but this was But there's nothing in the notice that makes reference to that. That's correct, Your Honor. So why can UPS rely on the influencing of witnesses as its reason for the discipline? If it's not in the notice, and really, I didn't see any evidence that it came up in the meeting either. Your Honor, the reason why UPS can rely on it is because this was at the forefront of the investigation. It was in all the statements taken by the supervisors. Mr. Payan himself was interviewed about these issues in late May, so a couple months before that disciplinary notice, and in that interview, he was asked extensively about these witness tampering issues, and he gave responses to it. And so the claim that this came out of nowhere is simply not true. Now with respect to whether it was written down in the disciplinary notice, it wasn't, but the case law doesn't require that. That's what MATHEWS stands for, that you can give kind of a general explanation, and then if, say, in litigation, you're required to be more specific, as long as you're not changing the rationale later and you just become more specific, you can do that as well. Does MATHEWS or some other case permit the employer to rely on a reason that was not presented to the employee? I think that's a question of line drawing, and so if it was presented in broad terms as it was here, for example, hey— Well, let's just say it wasn't presented, but it was actually a reason. Does the law allow the employer to rely on this unarticulated reason, even if it's a real reason? Sure. So is the hypothetical that it's not articulated even in a general sense, is that Your Honor's question? Well, we can make it that. Sure. Okay. If that's the case, then I think you could run into a problem. But those aren't the facts here, because it was articulated in a general sense and then was refined down further. And when you say general, is it just this reference to time cards and integrity? But there isn't any reference at all to the witness tampering. That's correct. There isn't any reference to that in the statement itself, and we take the position that the reference to the integrity policy, as was later explained in the 30b-6, constituted or encompassed the witness tampering, because obviously witness tampering violates duties of integrity. Did you know of the witness tampering at the time that the notice was given? Yes. Absolutely, Your Honor. So the timeline was the investigation started essentially April 23rd, April 24th. There were statements taken by the supervisors in April and in May. Five different supervisors, they all independently corroborated essentially the wrongdoing. The wrongdoing consisted of adding these lunches to time cards without making sure that the drivers had authorized them, and then also the witness tampering. And the witness tampering was corroborated by three individual statements. And then after these statements were taken, there was further investigation in late May 2015, where again all these five supervisors were asked about it. They were consistent with what they had said earlier in their written statements. Mr. Payan was asked about it as well in late May. He denied that he had engaged in witness tampering. But everyone knew at that point that that was integral and part of the discipline, and then that was encompassed within the reference to integrity in the disciplinary notice. Counsel made a claim that in a subsequent interrogatory, UPS did not identify that as a basis for discipline. As Judge McHugh pointed out, it was incorporated by reference, and actually the incorporation by reference said, please see these documents or these statements, quote, they speak for themselves. So the claim that it wasn't referenced there is erroneous as well. Well, but it was, it incorporated quite a lot by reference, didn't it? Yes. So you'd have to sort of, if you were relying on your written statement, you'd think that it's just dealing with time card preparation and adjustments, and the witnesses who testified about witness tampering also testified about time card preparation and adjustments. So it really wouldn't be obvious that you're making a witness tampering argument as part of the basis for termination, would it? Well, it may not be obvious to say someone just reading the disciplinary notice without any context, but I think the context here is important, and the context includes the Mr. Payan had been asked about it, and during the disciplinary meeting on July 21st, if he had any questions about what he's being disciplined for, he could have raised that as well. Was this Mr. Payan's first card time offense? Yes, it was, Your Honor. Have others who did this for the first time been disciplined as harshly as he was? Your Honor, I can't answer that, and the reason why is to answer that, we would need to know whether anyone else was actually similarly situated with respect to the specific time card violations, both the lunch cards and then the PTRS. That's not clear from the record, but more globally, for anyone else to be a comparator for purposes of pretext analysis, there are a number of things that have to be done. One is the same decision maker as Your Honor has noted, Your Honor has noted the Los Alamos case. I'll also note that the Smothers case and the Flasher case, which we've cited in our briefing stand for the same proposition, you need the same decision maker. Opposing counsel was asked at oral argument by Judge Shelby if she had any evidence that the same decision maker was involved. She said no. That's in the record at appendix 1218 and 1219. But today, I think there was a reference to Ms. Holcomb. Sure. And let me address Ms. Holcomb, and let me, well, let me take a step back and say if Ms. Holcomb is held out to be a similarly situated comparator, she would have to have violated work rules of comparable seriousness. That comes from the Kendrick case, which would include influencing other people, like Mr. Pyon was found to have done here. In fact, that's what the district court seized on in large part in its decision, said that there's no evidence that any of these comparators, including Ms. Holcomb, did engage in that type of witness tampering. You know, there's no evidence that there's the same decision maker. Another issue is in order for anybody to be similarly situated, they have to not be in Mr. Pyon's protective class. Or put differently, the claim here is that he was retaliated against for making complaints of discrimination. And so if we're going to look at anyone else and say they're a comparator, we also have to have evidence saying those folks did not make complaints of discrimination, and that's why they were treated differently. Again, none of that's in the record, but so I think that is dispositive of Ms. Holcomb and frankly all the other alleged comparators. But let me get more specific about Ms. Holcomb. Can I interrupt? Sure. On Cindy Holcomb, is there any record evidence that Darren Moore was the decision maker in her case? No, there's not. That's what I thought. Okay. Yeah, and that's what the admission was, that oral argument at 12-18 and 12-19. Holcomb, in addition to all these other reasons why I think she's dispositively not a valid comparator, the allegation made by opposing counsel is that Ms. Holcomb supposedly would add lunches to driver's time cards without first verifying whether the lunches had been taken. But if you look at her statement, her statement is on page 415 of the record, that's only half the story. She says, yes, I did that, however, I did that at night. So if, or more specifically, she directed her night supervisor to do that, that if someone hadn't taken a lunch, you add it into the time card. But then she goes on and she says, however, the next morning, then I would follow up and make sure that that lunch was actually taken. So I think on that basis alone, Your Honor, she's comparable on the facts, excuse me, not comparable on the facts, but also isn't a valid comparator for all these other reasons. Does it matter that Mr. Payan took steps to correct the time card problem before there was investigation and discipline? No, it doesn't. And that is highlighted extensively in counsel's briefing. I have a minute and a half left. Let me try and address that. Mr. Payan himself admitted in his deposition on, in the record, pages 821, 822, that he agreed that given the fact that UPS could be exposed to liability, it would make sense to go forward and investigate regardless of whether this process had been corrected. He said the same with respect to the fact that Mr. Moore at the time had received conflicting stories. But putting a finer point on it, the claim that this was actually fixed by the time it got to Mr. Moore is not accurate, or excuse me, by the time it got to Mr. Brom is not accurate. The evidence that counsel relies on begins at page 870 in the record. And counsel represents it as proof that the time cards had been corrected. However, if you look at it, it relates to just one driver, Brian Cotterman. If you compare that to Mr. Payan's own statement, this is on page 404 of the record, a statement he gave a month later at the end of May, he himself said there are 15 people implicated in this time card problem, and the problem has not been corrected. Those folks have not been made whole. And then furthermore, the evidence that counsel cites to suggest that Mr. Brom was aware that this problem had been corrected also doesn't stand for that proposition. She made an admission that he wasn't aware of oral argument. That's at page 1212 of the record. Mr. Payan, in his deposition testimony, said, I have the time, and I see I'm out of time. If you'll indulge me 30 seconds, I can finish this. Yeah, wrap it up. OK. In his deposition testimony, Mr. Payan said that when he came to Brom on April 24, he said, I have the time card adjustments ready. Do you want me to make them? That's very different from I've made these corrections. Brom's statement corroborates that. That's at record 375. Again, so that this idea that it was corrected is factually untrue. Thank you, Your Honor. Thank you, counsel. Please give Ms. Hollingworth two minutes. Thank you, Your Honor. I want to respond quickly to a point about Semihokum. There was no decision maker with respect to her. I want to be clear, there was no decision made. But my point was, Darren Moore, who was over all of Utah, received a document, which was a statement from Semihokum, admitting to exactly the problem that he determined with respect to the driver time card issues Mr. Payan should be disciplined for, and did nothing with respect to Ms. Hokum, who he also had responsibility for. Counsel talked about the moving the time over, and that with respect to that issue, Mr. Payan didn't even get asked about it. So I submit that the court should look at all the investigative records regarding these other people who were investigated for moving time over for the employees, and the managers are always asked, did they do it? And when they deny doing it, even when, for instance, with Chad Meyer, his subordinate said, Meyer told me to do it. But UPS says, well, he denied it, so we couldn't make a finding. So that is unlike this situation, where they didn't ask Mr. Payan, had they, and he had denied it pursuant to the other investigations, UPS would have said, well, we can't issue a finding. So they didn't. The UPS's policy is to provide reasons for discipline. They didn't do in this case. Moore says that he is the one who directed Streeper what to tell Mr. Payan, both in the written notice and in the meeting. Can we find, is there something written down, when you say a policy, is it a practice or is it a- It's a practice that in the 30B-6, Carolee Streeper testified to. So the omission of any specifics seems intentional. There are lots of, can I finish my thought? Go ahead and finish your thought, yes. There are lots of cases about pretexts in this court. Most of them are unpublished. The most important case with respect to this case is the published decision of Fassbender, which looks at almost exactly the same factors that we urge the court to look at in this case. Thank you. Thank you, counsel. We appreciate the arguments. Your counsel are excused and a shall be submitted.